IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL VAUGHN

v.  C.A. NO. 13-0772

RESOURCES FOR HUMAN
DEVELOPMENT, INC.

MEMORANDUM OPINION

SCHMEHL, J. AUGUST 12, 2014

Plaintiff brought this action claiming he was terminated by the defendant because of his gender and in retaliation for complaining about the alleged gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act..[1] Presently before the Court is the Defendant's motion for summary judgment. For the reasons that follow, the motion is granted in part and denied in part.

Plaintiff was employed by defendant from August 15, 2011 until June 29, 2012 as a Benefits Systems Analyst in defendant's Employee Benefits Department. Plaintiff was the only male working for defendant in its Benefits Department. During that time, plaintiff claims he was told on numerous occasions by his direct supervisor, Janet Cooper-Williams ("Cooper-Williams") that, "I'm just like a man, I don't listen, I'm just like her husband, I'm stubborn, I'm hard-headed, things of that nature." Stipulation of Undisputed Facts ("SUF") at ¶ 68. Plaintiff further testified that Cooper-Williams made comments such as "you're stubborn just like my husband" and "you're heard-headed just like a man." Id at ¶ 69. He alleges he orally complained

---

[1]Plaintiff has since abandoned a claim for hostile work environment. (Doc. 22 at 28).

about this treatment on two occasions directly to Cooper-Williams (January 12, 2012 and on an unspecified date), before making a formal written allegation of gender discrimination ("I think she discriminates against me because I am a man.....") in an e-mail dated March 9, 2012 to Nafisah Daniels ("Daniels"), who runs the defendant's Citizen Advocate program for employees. Daniels forwarded plaintiff's allegation to Melissa Coates-Scholfield ("Coates-Scholfield"), Human Resources Generalist who met with plaintiff to discuss his allegations. Plaintiff was terminated on June 29, 2012, allegedly because there was a lack of work due to a reorganization of the Benefits Department.

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts

the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

Title VII forbids an employer from "discriminat[ing] against" an employee because he "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a); see Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 56 (2006). In order to establish a *prima facie* case of retaliation under Title VII, plaintiff must show that "'(1) he was engaged in protected activity; (2) he was subject to "materially adverse" action against him subsequent to or contemporaneously with such activity; and (3) there was a causal connection between the protected activity and the employer's action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). The United States Supreme Court recently held that in order to satisfy the third prong of a prima facie case of retaliation under Title VII, the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013).

If plaintiff can establish a *prima facie* case, the burden shifts to defendant to advance a legitimate, non-retaliatory reason for its actions. Moore, 461 F.3d at 342. If defendant succeeds, the burden is on plaintiff to persuade the jury that defendant's articulated reasons are pretext for its unlawful retaliation. Id. [2]

Plaintiff claims the defendant retaliated against him for 1) filing a formal complaint with defendant's HR department claiming he was the victim of gender discrimination and 2) informally informing Cooper-Williams on two occasions that he believed he was experiencing

---

[2] The parties agree that the analysis is the same under the PHRA.

gender discrimination.

With respect to the filing of the formal complaint, there is no dispute that such action constituted a protected activity or that plaintiff experienced a materially adverse action when he was terminated. Defendant argues, however, that there is no evidence in the record from which a jury could conclude that a causal relationship exists between the filing of the formal complaint and plaintiff's termination because there is no evidence that any of the four decision-makers responsible for terminating plaintiff in conjunction with the reorganization knew about the formal complaint. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 415 (3d Cir. 1999) (affirming a grant of summary judgment on a retaliation claim under Title VII where there was no evidence that the principals who made the decision to fire the plaintiff were aware of the protected action).

The parties have stipulated that the four decision makers, Human Resources Director Lenz, Chief Operating Officer Mowatt, Financial Operations Manager McFadden and Cooper-Williams, all testified that they did not know that plaintiff had made an internal complaint of sex discrimination against Cooper-Williams as of the date that defendant made the decision to eliminate plaintiff's position (SUF at ¶¶ 34-37). In addition, the parties have stipulated that Coates-Schofield testified that she did not forward the e-mail in which plaintiff complained of gender discrimination to anyone, and that she did not tell Cooper-Williams, McFadden or Lenz about plaintiff's formal complaint of gender discrimination. (SUF at ¶ 33).

Although there is no direct evidence in the record that any of the four decision-makers were specifically informed about plaintiff's formal complaint, there is indirect or circumstantial evidence from which a reasonable jury could infer that at least one of the four decision-makers knew about plaintiff's formal complaint.

4

Daniels testified that she "believed" that she "would have" told her supervisor, Marsha O'Hara, about the formal complaint during a meeting with O'Hara, defendant's CEO and founding father, Bob Fishman and five executive CAs on April 4, 2012. (Daniels Dep. at 32). Coates-Scholfield also testified that she "believed" that Daniels had shared the formal complaint with O'Hara and Fishman. (Coates-Schofield Dep. at 41). Coates-Scholfield further denied that she and Daniels had kept the formal complaint solely to themselves. (Id.) The Court also notes that when employees brought routine workplace concerns about their interactions with Cooper-Williams to Daniels' attention, Daniels immediately addressed these concerns with McFadden and Cooper-Williams. (McFadden Dep. at 22-24). It would seem implausible then for Daniels to not have addressed a much more serious formal complaint of gender discrimination with McFadden and Cooper-Williams this time. Construing the evidence in the light most favorable to plaintiff, the Court finds that at the very least, a jury question exists as to whether any of the four decision-makers had knowledge of plaintiff's formal complaint.

There are essentially two factors that play a primary role in considering whether a causal connection exists: "timing and evidence of ongoing antagonism." Miller v. Thomas Jefferson Univ. Hosp., 908 F.Supp. 2d 639, 652 (E.D.Pa. 2012)(quoting Abramson v. William Paterson Coll. Of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001). A plaintiff may also support a casual connection through other types of circumstantial evidence that support an inference of retaliation, such as inconsistent explanations. Miller, 908 F.Supp. 2d at 652 (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-82 (3d Cir. 2000). Keeping in mind the Supreme Court's recent decision in Nassar, the Court still finds that plaintiff has presented evidence from which a reasonable jury could find that plaintiff's alleged informal complaints to Cooper-Williams about

5

gender discrimination were the but-for cause for his termination. This evidence includes, inter alia:

    1. Only a little more than three months elapsed from the time plaintiff filed his formal complaint of gender discrimination on March 9, 2012 until he was terminated on June 29, 2012.

    2. On March 5, 2012, Cooper-Williams issued a verbal warning to plaintiff because she apparently did not like the "tone" of one of his e-mails. (Vaughn Dep. at 174-175).

    3. When plaintiff showed the e-mail to his female co-workers, they informed him that they had sent "tons" of e-mails much worse than that and implied that none of them had received any warnings. (Vaughn Dep. at 179-180).

    4. Plaintiff believed the "verbal warning" was not only unfair based on what his female colleagues told him, but was prompted by his informal complaints to Cooper-Williams about discrimination and harassment. (Vaughn Dep. at 188).

    5. Cooper-Williams ceased speaking to plaintiff after she issued him the verbal warning on March 5, 2012.  SUF at 86; (Vaughn Dep. at 181).

    6. Cooper-Williams testified that she raised the issue of a potential reorganization with her supervisor, McFadden sometime in the Spring of 2012. (Cooper-Williams Dep. at 50).

    7. McFadden testified that she would never eliminate a position without first informing Mowatt. Yet, Mowatt testified that there were no discussions to eliminate a position in the Benefits Department. (Mowatt Dep. at 20).

    8. The only documentation to support a reorganization are two single pages of a drawing of a chart containing the "before and after" status of the Benefits Department in connection with the re-organization. These documents are neither dated nor contain any indication of when they

were created. (Cooper-Williams Dep. at 61-62).

9. Mowatt testified that she had never seen these two documents. (Mowatt Dep. at 21, 22).

10. On May 1, 2012, McFadden sent an e-mail to Cooper-Williams which states, in pertinent part:

> But I think you are asking this because it seems like he isn't getting it which I agree with. I am wondering how much more time you want to dedicate to this effort?
> Try to be as concrete as possible and then document the hell out of this so the "situation" can move forward. Spoke with Peggy about you and him as well. She doesn't believe you are getting what you need. I agree. I am wondering when we just cut to the chase. Want to talk with Roger about quietly searching OR the necessary paper trail?

(Doc 22, Exh. Q).

11. Plaintiff was the only person employee in the Benefits Department to lose his job as a result of the alleged reorganization. (Lenz Dep. at 35-36).

12. On July 7, 2012, defendant posted a job opening for Benefits Supervisor and filled the position in August of 2012. (Cooper-Williams Dep. at 54). (Doc. 22 Exh. T).

13. As a result of the reorganization, all of the employees in the Benefits Department received an increase in salary. (Cooper-Williams Dep. at 56).

14. Yet, Cooper Williams testified that plaintiff had to be laid off because "there was not enough budget to have both an analyst and a supervisor, so that is when the decision, once this was approved, that is when the decision was made." (Cooper-Williams Dep. at 60).

15. Despite their claims of budgetary constraints, as part of the reorganization, RHD hired a "Benefit Assistant" at a salary of $ 30,000 per year, and a "Benefits Supervisor" at a salary of

7

$50,000 per year and paid an outside consultant. (Doc. 22 Exh. P).

16. Both McFadden and Cooper-Williams testified that plaintiff's work performance was not a factor in the decision to eliminate his position. (McFadden Dep. at 46; Cooper-Williams Dep. at 79, 81).

The burden shifts to defendant to articulate a non-discriminatory reason for taking the adverse employment action. Here, defendant has met its relatively light burden by offering the reason that lack of work resulting from a reorganization of the Benefits Department was the reason for plaintiff's termination. The burden then shifts to plaintiff to show this reason was actually pretext for discrimination. In order to meet this burden, plaintiff must present evidence from which a fact-finder could (1) disbelieve the defendant's articulated reason; or (2) believe that discrimination was more likely the but-for cause of defendant's decision to terminate plaintiff. Nassar, 133 S.Ct. at 1534; Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). This must be done by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the [defendant] did not act for the asserted non-discriminatory reasons." Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 277 (3d Cir. 2010)(citing Fuentes, 32 F.3d at 765)(internal quotation marks and citations omitted)(emphasis in original).

Based largely on the evidence recited above, the Court finds that there is evidence in the record from which a reasonable jury could both disbelieve RHD's articulated reasons and believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

8

Turning to the two informal complaints plaintiff contends he made directly to Cooper-Williams, the Court notes that defendant argues that these complaints do not constitute protected activity for purposes of the first element of a prima facie case of retaliation.

Title VII not only protects the filing of formal charges of discrimination, but also "protects informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001).2

A plaintiff need not prove the merits of the underlying claim, but only that he a good faith reasonable belief that the conduct was unlawful. Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 322 (3d Cir. 2008). However, general complaints of unfair treatment do not constitute "protected activity." Slagle v. County of Clarion, 435 F.3d 262, 267-68 (3d Cir. 2006). To decide whether a plaintiff has engaged in "protection opposition conduct," the Court must "look to the message being conveyed rather than the means of conveyance." Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006); see also Barber v. CSX Distribution Servs., 68 F.3d 694, 701-02 (3d Cir. 1995)(holding that an employee's letter to an employer's human resources department was not protected activity because it did not specifically complain about age discrimination and it neither "explicitly or implicitly" alleged that a protected characteristic was the basis for the adverse employment action).

Here, Vaughn testified that:

> I did meet with Janet on two occasions and let her know like, you know, I was uncomfortable about the comments and everything and I asked her, you know, to treat me with respect; and nothing really came of it.

9

Vaughn Dep. at 126. Vaughn further testified:

> Q. You say that in addition to complaining to the HR Department in March of 2012, you also objected to Ms. Williams' derogatory comments about your gender and you specifically told her you wanted them to stop. Do you see that allegation?
>
> A. Right.
>
> Q. Can you tell me the occasions that you told Janet you wanted that to stop?
>
> A. The two times I asked to meet with her.

Vaughn Dep. at 230, 231.

> Q. How were their complaints about Janet different from your complaints against Janet?
>
> A. Like I said, mine were *about my gender and me being a man and comparing to her husband when she was not making comments like that about the women in the department.*
>
> Q. And so then you made the complaint to Nafisah?
>
> A. No, I spoke to Janet about it twice before I took it to HR.

Vaughn Dep. at 239, 240. (emphasis added).

For purposes of this summary judgment motion, the Court will credit the testimony of plaintiff. His complaints to Cooper-Williams about his gender and being a man and comparing him to her husband constitutes protected activity for purposes of a *prima facie* case of retaliation. It follows then that Cooper-Williams, who was one of the four decision-makers, had direct knowledge of plaintiff's gender complaints. In addition, for the reasons set forth above, the Court

finds there is evidence in the record from which a jury could find a causal connection between plaintiff's informal complaints and his termination as well as that plaintiff's informal complaints were the but-for cause for his termination.

Turning to plaintiff's gender discrimination claim, the Court notes that defendant does not dispute that plaintiff has established a prima facie case of sex discrimination. (Doc. 21 at 13). Defendant contends that plaintiff has not presented any evidence from which a jury could conclude that its legitimate non-discriminatory reason for terminating plaintiff was actually a pretext for discrimination. The Court agrees. There is no evidence in the record from which a reasonable jury could conclude that the gender-based comments allegedly made by Cooper-Williams had any connection to defendant's decision to eliminate plaintiff's position in conjunction with the reorganization of the Benefits Department. The remarks did not suggest that plaintiff could not perform his job due to his gender and did not suggest that plaintiff should be terminated. Instead, plaintiff testified that Cooper-Williams made the remarks "when I was producing like work. . . .and you, know, maybe if it wasn't done, you know, maybe how she did it or how she would have done it, then it would be a comment like that." (SUF at ¶ 70). The Court also notes that defendant hired a male for the new Benefits Supervisor position after it eliminated plaintiff's position. Accordingly, judgment will be entered in favor of defendant on plaintiff's gender discrimination claim.